N GROUP LLC dba The Nichols Public House, Plaintiff,

v.

HAWAI'I COUNTY LIQUOR COMMIS-SION, County of Hawai'i; Janice Pakele; John Does 1–10; Jane Does 1–10; Doe Partnerships 1–10; Doe Corporations 1–10; Doe Governmental Units 1–10; and Does Entities 1–10, Defendants.

Civ. No. 08–00516 ACK–KSC.

United States District Court, D. Hawai'i.

March 3, 2009.

Damir A. Kouliev, Law Offices of Steven D. Strauss, Steven D. Strauss, Christopher P. Schlueter, Hilo, HI, for Plaintiff.

Brandon A.K. Gonzalez, Brooks L. Bancroft, Katherine A. Garson, Office of the Corporation Counsel, Hilo, HI, for Defendants.

*ORDER: (1) GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS THE COMPLAINT; (2) GRANTING PLAINTIFF TWENTY DAYS' LEAVE TO AMEND THE COMPLAINT TO FORMALLY NAME THE COUNTY OF HAWAI'I AND DIRECTING PLAINTIFF TO DO SO; (3) GRANTING PLAINTIFF LEAVE TO AMEND THE COMPLAINT TO ALLEGE STATE LAW CLAIMS ONCE IT HAS EXHAUSTED ITS ADMINISTRATIVE REMEDIES UNDER HAWAI'I REVISED STATUTES CHAPTERS 281 AND 91; (4) GRANTING DEFENDANTS' MOTION TO STAY THESE PROCEEDINGS PENDING THE RESOLUTION OF PLAINTIFF'S APPEALS IN STATE COURT; AND (5) GRANTING PLAINTIFF TWENTY DAYS' LEAVE TO AMEND THE COMPLAINT TO ALLEGE BAD FAITH WITH SPECIFICITY*

ALAN C. KAY, Senior District Judge.

## PROCEDURAL HISTORY

On May 5, 2008, Plaintiff, N Group LLC dba The Nichols Public House, filed a complaint ("Complaint") against Defendants, the Liquor Commission of the County of Hawai'i ("Liquor Commission") and Janice Pakele, in her official capacity as the Director of the Department of Liquor Control of the County of Hawai'i, in the Circuit Court of the Third Circuit of the State of Hawai'i ("Hawai'i Third Circuit Court") in *N Group LLC v. Hawaii County Liquor Commission,* Civ. No. 08-1-0126 (Hawai'i 3d Cir. Ct.). Plaintiff alleges due process and equal protection claims under the United States and Hawai'i Constitutions. (Defs.' Notice of Removal, Ex. 1

("Compl.") ¶¶ 21–28.) It also avers an "abuse of discretion" claim and claims for violations of Hawai'i Revised Statutes ("HRS") Chapter 281 and the Rules and Regulations of the Liquor Commission ("Liquor Commission Rules"). (*Id.* ¶¶ 29–36.) Based on these alleged violations, Plaintiff requests monetary relief. (*Id.* at 9.) On November 17, 2008, Defendants, the County of Hawai'i and Pakele, filed a notice of removal in this Court. The County of Hawai'i explained that it had been mistakenly identified as the Liquor Commission of the County of Hawai'i in the Complaint. (Defs.' Notice of Removal 3.) It therefore designated itself as a Defendant in the notice. (*Id.* at 1.)

On November 24, 2008, Defendants filed a motion to dismiss the Complaint ("Mot. to Dismiss"). On January 23, 2009, Plaintiff filed a memorandum in opposition to the motion ("Mem. in Opp'n"), and, on January 30, 2009, Defendants filed a reply to Plaintiff's memorandum in opposition ("Reply"). On February 10, 2009, this Court held a hearing on the motion.

## FACTUAL BACKGROUND

The facts in this order are recited only for the purpose of deciding Defendants' motion to dismiss and are not intended to be findings of fact upon which the parties may rely in future proceedings.

In 2005, Plaintiff applied for a liquor license with the Liquor Commission, and, at the hearing on the application, certain neighborhood persons and entities protested against granting the license. (Compl. ¶ 10; Mot. to Dismiss, Ex. 1–1 at 4.) The opposition centered largely on parking and disturbance concerns. (Compl. ¶ 10.) On December 5, 2005, the Liquor Commission nevertheless granted the license. (*Id.;* Mot. to Dismiss, Ex. 1–6 at 3.)

On April 26, 2006, Pakele sent Plaintiff a notice of hearing requiring Plaintiff to respond to a noise complaint. (Compl. ¶ 11.) The hearing was set for May 4, 2006. (*Id.*) At the hearing, Plaintiff represented itself through its member-manager, Rhonda Nichols, and presented limited evidence. (*Id.* ¶ 13.) The Liquor Commission permitted testimony from complaining neighbors concerning noise, parking, traffic violations, disorderly conduct, and criminal activity not within Plaintiff's premises. (*Id.*) On its own motion, the commission voted against renewing Plaintiff's liquor license based on the evidence presented. (*Id.* ¶ 14.) [1]

On May 15, 2006, Plaintiff filed a petition for rehearing pursuant to Liquor Commission Rule 1.9, alleging that the Liquor Commission had violated its rights to due process. (*Id.* ¶ 15.) At a regularly scheduled hearing on June 1, 2006, the Liquor Commission adopted findings of fact, conclusions of law, and a decision and order denying renewal of Plaintiff's liquor license. (*Id.* ¶ 16.) The commission found good cause to deny renewal of the license in light of the numerous incidents of noise from Plaintiff's premises or from its patrons as they departed. (*Id.;* Mot. to Dismiss, Ex. 1–1 at 1.) The Liquor Commission also denied Plaintiff's petition for rehearing. (Compl. ¶ 16.) On June 15, 2006, Plaintiff filed a notice of appeal of the Liquor Commission's decision not to renew the liquor license in the Hawai'i Third Circuit Court in *N Group LLC v. Hawai'i County Liquor Commission,* Civ. No. 06–1–0189 (Hawai'i 3d Cir. Ct.). (Mot. to Dismiss, Ex. 1 at 1.) It requested that the circuit court reverse and vacate

the commission's decision not to renew Plaintiff's liquor license because, in making that decision, the commission offended Plaintiff's due process and equal protection rights. (*Id.* at 1, 6–12.)

The Liquor Commission scheduled another hearing for June 30, 2006. (Compl. ¶ 17.) At the hearing, Plaintiff agreed under "duress" to the imposition of certain conditions on its liquor license. (*Id.*) The Liquor Commission vacated its prior decision and order for nonrenewal of the license and issued a renewed license with conditions. (*Id.*) Plaintiff's agreement to the conditions was premised at least in part upon the Liquor Commission's representation that it would review the conditions imposed at a meeting scheduled for September 7, 2006. (*Id.*) At the meeting, the Liquor Commission did not fully and fairly review the conditions. (*Id.* ¶ 18.)

On December 20, 2006, Plaintiff filed an application to amend the conditions placed on its liquor license. (*Id.* ¶ 19.) A hearing on the application was originally set for March 1, 2007, but it was postponed until April 18, 2007. (*Id.*) At the hearing, the Liquor Commission considered Plaintiff's application and denied Plaintiff's request for relief. (*Id.* ¶ 20.) On May 17, 2007, Plaintiff filed a notice of appeal of the Liquor Commission's decision not to amend the conditions placed on the liquor license in the Hawai'i Third Circuit Court in *N Group v. Hawai'i County Liquor Commission,* Civ. No. 07–1–0168 (Hawai'i 3d Cir. Ct.). (Mot. to Dismiss, Ex. 3 at 1.) It asked the circuit court to reverse and vacate the commission's decision and to enjoin the enforcement of the conditions because, in reaching that decision, the

---

**1.** At this Court's February 10, 2009 hearing, Plaintiff represented that its liquor license had a one-year term. It is unclear how or why the issue of renewal was addressed at the Liquor Commission's May 4, 2006 meeting.

commission violated Plaintiff's due process rights. (*Id.* at 1, 5–7.)

To date, both administrative appeals in Civ. Nos. 06–1–0189 and 07–1–0168 are pending before the Hawai'i Third Circuit Court. *See Hawai'i State Judiciary: Ho'ohiki,* http://hoohiki2.courts.state.hi.us/jud/Hoohiki/main.htm. Nichols, a managing member of Plaintiff, has represented that she has instructed Plaintiff's counsel to withdraw or seek dismissal of both appeals. (Mem. in Opp'n, Nichols' Decl. ¶ 2.)

## *LEGAL STANDARDS*

### I. Subject Matter Jurisdiction

A court's subject matter jurisdiction may be challenged under Federal Rule of Civil Procedure 12(b)(1) ("Rule 12(b)(1)"). "A party invoking the federal court's jurisdiction has the burden of proving the actual existence of subject matter jurisdiction." *See Thompson v. McCombe,* 99 F.3d 352, 353 (9th Cir.1996). A "court may raise the question of subject matter jurisdiction, sua sponte, at any time during the pendency of the action." *See Snell v. Cleveland, Inc.,* 316 F.3d 822, 826 (9th Cir.2002).

On a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction, the court is not "restricted to the face of the pleadings, but may review any evidence, such as affidavits and testimony, to resolve factual disputes concerning the existence of jurisdiction." *McCarthy v. United States,* 850 F.2d 558, 560 (9th Cir.1988). "Once the moving party [converts] the motion to dismiss into a factual motion by presenting affidavits or other evidence properly brought before the court, the party opposing the motion must furnish affidavits or other evidence necessary to satisfy its burden of establishing subject matter jurisdiction." *Savage v. Glendale Union*

*High Sch.,* 343 F.3d 1036, 1040 n. 2 (9th Cir.2003).

"The requirement that the nonmoving party present evidence outside his pleadings in opposition to a motion to dismiss for lack of subject matter jurisdiction is the same as that required under Rule 56(e) that the nonmoving party to a motion for summary judgment must set forth specific facts, beyond his pleadings, to show that a genuine issue of material fact exists." *Trentacosta v. Frontier Pac. Aircraft Indus., Inc.,* 813 F.2d 1553, 1559 (9th Cir. 1987). When ruling on a jurisdictional motion involving factual issues which also go to the merits, the moving party "should prevail only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." *Casumpang v. Int'l Longshoremen's & Warehousemen's Union,* 269 F.3d 1042, 1060–61 (9th Cir.2001).

### II. Failure to State a Claim

Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)") permits dismissal of a complaint that fails "to state a claim upon which relief can be granted." "A Rule 12(b)(6) 'dismissal is proper only where there is no cognizable legal theory or an absence of sufficient facts alleged to support a cognizable legal theory.'" *Zamani v. Carnes,* 491 F.3d 990, 996–97 (9th Cir. 2007) (quoting *Navarro v. Block,* 250 F.3d 729, 732 (9th Cir.2001)) (brackets omitted). Under Rule 12(b)(6), review is generally limited to the contents of the complaint. *Sprewell v. Golden State Warriors,* 266 F.3d 979, 988 (9th Cir.2001); *Campanelli v. Bockrath,* 100 F.3d 1476, 1479 (9th Cir. 1996). Courts may also "consider certain materials—documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judi-

cial notice—without converting the motion to dismiss into a motion for summary judgment." *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir.2003). Documents whose contents are alleged in a complaint and whose authenticity are not questioned by any party may also be considered in ruling on a Rule 12(b)(6) motion to dismiss. *See Branch v. Tunnell*, 14 F.3d 449, 453–54 (9th Cir.1994).

On a Rule 12(b)(6) motion to dismiss, all allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party. *Fed'n of African Am. Contractors v. City of Oakland*, 96 F.3d 1204, 1207 (9th Cir.1996). However, conclusory allegations of law, unwarranted deductions of fact, and unreasonable inferences are insufficient to defeat a motion to dismiss. *See Sprewell*, 266 F.3d at 988; *Nat'l Ass'n for the Advancement of Psychoanalysis v. Cal. Bd. of Psychology*, 228 F.3d 1043, 1049 (9th Cir.2000); *In re Syntex Corp. Securities Litig.*, 95 F.3d 922, 926 (9th Cir.1996). Moreover, the court need not accept as true allegations that contradict matters properly subject to judicial notice or allegations contradicting the exhibits attached to the complaint. *Sprewell*, 266 F.3d at 988.

In summary, to survive a Rule 12(b)(6) motion to dismiss, "[f]actual allegations must be enough to raise a right to relief above the speculative level ... on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 1965, 167 L.Ed.2d 929 (2007) (internal citations and quotations omitted). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations ... a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 1964 (internal citations and quotations omitted). Dismissal is appropriate under Rule 12(b)(6) if the facts alleged do not state a claim that is "plausible on its face." *Id.* at 1973.

## DISCUSSION

Defendants have moved to dismiss the Complaint, which alleges four counts. Count I is a due process claim under the Fifth and Fourteenth Amendments to the United States Constitution and Article I, Section 5 of the Hawai'i Constitution. (Compl. ¶ 22.) It alleges that Plaintiff had a property interest in its liquor license and that Defendants' actions in seeking to revoke Plaintiff's liquor license and in restricting the conditions of its license exceeded their lawful jurisdiction and authority, thereby violating Plaintiff's rights to procedural and substantive due process. (*Id.* ¶ 23–24.) Plaintiff alleges that the due process violations have resulted in economic damages from 2005 through 2007. (*Id.* ¶ 24.)

In count II of the Complaint, Plaintiff asserts an equal protection claim under the Fifth and Fourteenth Amendments to the United States Constitution and Article I, Section 5 of the Hawai'i Constitution. (*Id.* ¶ 26.) Plaintiff avers that Defendants treated it differently from how they treated other liquor licensees without any legitimate or rational basis for such disparate treatment. (*Id.*) It asserts that the disparate treatment was fueled by animus towards it and was not rationally related to a legitimate government interest, thereby depriving it of its property interest or restricted such property without due pro-

cess of law. (*Id.*) Plaintiff maintains that the violation has resulted in economic damages. (*Id.*) Although the only federal laws that Plaintiff cites in counts I and II are the Fifth and Fourteenth Amendments, this Court will construe those counts as though they were asserted under 42 U.S.C. § 1983, because the statute provides a remedy for any person whose constitutional rights have been violated by individuals acting under color of state law. *See, e.g., Hernandez v. City of Rochester,* 260 F.Supp.2d 599, 605 (W.D.N.Y.2003) (construing claims that only cited the Fourth, Fifth, and Fourteenth Amendments as though they were asserted under § 1983). Indeed, Defendants similarly assume that Plaintiff's federal constitutional claims were brought under § 1983. (Defs.' Mem. in Supp. of their Mot. to Dismiss ("Mem. in Supp.") 6.)

In count III of the Complaint, Plaintiff alleges that Defendants are vested with some discretion in enforcing the rules and regulations of the Liquor Commission, but that their discretion is not unfettered. (Compl. ¶ 30.) According to Plaintiff, Defendants abused their discretion when they took adverse actions against Plaintiff's liquor license based in whole or in part upon complaints from neighboring businesses, neighboring persons, and others concerning matters outside their jurisdiction. (*Id.*) Plaintiff maintains that Defendants' actions were arbitrary and "contrary to law and fact." (*Id.*) Plaintiff asserts that Defendants' interfered and defeated its lawful, reasonable, and investment-backed expectations to the profits that it was likely to realize from its business operations. (*Id.* ¶¶ 32–33.) Plaintiff alleges that Defendants' interference resulted in business losses and that they must compensate it therefor. (*Id.*)

Count IV asserts that, by their conduct, Defendants violated HRS Chapter 281, Liquor Commission Rules 1–4, 2–1, 2–3, 4–2, and 6–4, as well as other Liquor Commission Rules. (*Id.* ¶ 35.) Plaintiff alleges that, as a result of those violations, its reasonable expectation to profits that it was likely to realize from its business operations were defeated and that it suffered economic damages. (*Id.* ¶ 36.) In its prayer for relief, as to all counts, Plaintiff seeks damages and costs. (*Id.* at 9.) And, with respect to counts I and II, it requests attorney's fees. (*Id.*)

Defendants have moved to dismiss the Complaint in its entirety for lack of jurisdiction over the subject matter, for failure to state a claim upon which relief can be granted, and for failure to join an indispensable party. (Mot. to Dismiss 2.) They contend that this Court lacks subject matter jurisdiction, because Plaintiff has failed to exhaust its administrative remedies and because this Court does not have primary jurisdiction. (Mem. in Supp. 5.) They also assert that Plaintiff has failed to state a claim under the Fifth Amendment, because the Fifth Amendment only applies to actions of the federal government. (*Id.* at 20.) Defendants further reason that Plaintiff's vague and conclusory allegations regarding the violation of its rights under the Fourteenth Amendment are insufficient. (*Id.* at 21.) They additionally insist that there is no private right of action for alleged violations of HRS Chapter 281 and the Liquor Commission Rules. (*Id.* at 23.) Defendants next maintain that the Liquor Commission does not have the capacity to be sued and that Plaintiff has failed to join an indispensable party, namely, the County of Hawai'i. (*Id.* at 25.) Finally, at oral argument, Defendants moved to stay these proceedings pending the resolution of Plaintiff's appeals to the circuit court. Each contention is addressed in turn below.

## I. Exhaustion of Administrative Remedies

Defendants argue that this Court lacks subject matter jurisdiction because Plaintiff has failed to exhaust its administrative remedies under HRS Chapter 281. (*Id.* at 5–7, 16–19.) They point out that Plaintiff has filed administrative appeals from the proceedings before the Liquor Commission and that it must exhaust those appeals. (*Id.* at 16.) Plaintiff counters that it no longer intends to pursue the appeals and that the relief afforded in the administrative appeals under HRS Chapter 281 is inadequate, because the chapter does not permit recovery of monetary damages, which is the only type of recovery that is sought in the Complaint. (Mem. in Opp'n 6–7.)

■■■ As previously noted, this Court construes Plaintiff's claims under the Fifth and Fourteenth Amendments in counts I and II of its Complaint as § 1983 claims. "[E]xhaustion is not required for claims brought under 42 U.S.C. § 1983." *Truth v. Kent Sch. Dist.*, 524 F.3d 957, 966 (9th Cir.2008); *see generally* 17A Charles Alan Wright, Arthur R. Miller, Edward H. Cooper & Vikram David Amar, *Federal Practice and Procedure* § 4233, at 184–85 (2007).[2] Therefore, Plaintiff's federal constitutional claims in counts I and II are not subject to dismissal for any failure to exhaust administrative remedies.[3] The question becomes whether the state law claims that Plaintiff has alleged in the four counts of the Complaint are subject to dismissal

on that basis. That question requires the resolution to two sub-issues. The first is whether the Hawai'i Legislature has mandated that Plaintiff exhaust its appeals to the circuit court, irrespective of the relief that Plaintiff seeks in this action. The second issue is whether the appeals constitute "administrative" remedies. These issues are considered in turn.

### A. Mandatory Exhaustion

■■■ "Under the doctrine of exhaustion of administrative remedies, 'no one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted.'" *Aleknagik Natives, Ltd. v. Andrus*, 648 F.2d 496, 499 (9th Cir.1980) (quoting *Myers v. Bethlehem Shipbuilding Corp.*, 303 U.S. 41, 50–51, 58 S.Ct. 459, 82 L.Ed. 638 (1938)). "[W]hen exhaustion is statutorily mandated, the exhaustion requirement is jurisdictional and the district court must dismiss the action." *Eluska v. Andrus*, 587 F.2d 996, 999 (9th Cir.1978). But, when exhaustion is not statutorily mandated, "its application rests within the sound discretion of the trial court." *Southeast Alaska Conservation Council, Inc. v. Watson*, 697 F.2d 1305, 1309 (9th Cir.1983). As a general matter, " '[e]xhaustion of administrative remedies is not required where administrative remedies are inadequate or not efficacious, or where pursuit of administrative remedies would be a futile gesture.'" *Fones4All Corp. v. Federal Comm'n*, 550 F.3d 811, 818 (9th

---

**2.** An exception to the rule is that exhaustion is required in § 1983 claims brought by prisoners. *See Outdoor Media Group, Inc. v. City of Beaumont*, 506 F.3d 895, 900 (9th Cir.2007). That exception has no application here.

**3.** By contrast, there does not appear to be any exception to the requirement of exhaustion of

administrative remedies for Plaintiff's state constitutional claims. *See McCabe v. Macaulay*, 551 F.Supp.2d 771, 785–86 (N.D.Iowa 2007) (dismissing plaintiffs' state constitutional law claims because they had failed to exhaust their administrative remedies under the state tort claims act).

Cir.2008) (quoting *Southeast Alaska Conservation Council,* 697 F.2d at 1309) (ellipsis and brackets omitted). Still, those exceptions do not apply where a provision requires exhaustion "irrespective of the forms of relief sought and offered through administrative avenues." *Booth v. Churner,* 532 U.S. 731, 741 n. 6, 121 S.Ct. 1819, 149 L.Ed.2d 958 (2001).

In *Booth,* a prisoner in a state correctional institution was allegedly physically assaulted by correctional officers and denied medical care for the ensuing injuries. *Id.* at 734, 121 S.Ct. 1819. The prisoner filed a grievance, but did not pursue any further appeals in the grievance process. *Id.* He then proceeded to file a complaint in district court, alleging that his Eighth Amendment right against cruel and unusual punishment had been violated by the correctional officers and that he was thus entitled to injunctive and monetary relief. *Id.* The district court dismissed the complaint for the prisoner's failure to exhaust his administrative remedies that were provided by the grievance process, as required by the Prison Litigation Reform Act of 1995. *Id.* at 735, 121 S.Ct. 1819. The statute stated that " 'no action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.' " *Id.* at 736, 121 S.Ct. 1819 (quoting 42 U.S.C. § 1997e(a) (1994 ed., Supp. V)). The Third Circuit affirmed the dismissal, rejecting the prisoner's argument that the statutory exhaustion requirement was inapplicable to his case because the grievance process could not award him the monetary relief he sought. *Id.* at 735, 121 S.Ct. 1819. The Supreme Court agreed, holding that Congress had "mandated exhaustion clearly enough, regardless of the relief offered through administrative procedures." *Id.* at 741, 121 S.Ct. 1819.

In this case, the four counts of the Complaint allege, in effect, that Defendants' actions in denying renewal of its liquor license and in restricting the conditions of the license offended its rights under the Hawai'i Constitution, HRS Chapter 281, and the Liquor Commission Rules. (*See* Compl. ¶¶ 21–36.) HRS § 281–17 states that "[t]he exercise by the [liquor] commission ... of the power, authority, and discretion vested in it pursuant to [HRS Chapter 281] shall be final and shall not be reviewable by or appealable to any court or tribunal, except as otherwise provided in [HRS Chapter 281] or [HRS Chapter] 91." HRS Chapter 91 in turn provides that "[a]ny person aggrieved by a final decision and order in a contested case ... is entitled to judicial review thereof under this chapter." HRS § 91–14(a). A "contested case" is "a proceeding in which the legal rights, duties, or privileges of specific parties are required by law to be determined after an opportunity for agency hearing." *Id.* § 91–1(5).[4]

█ The question is whether the proceedings in connection with Plaintiff's re-

---

4. In a contested case proceeding, a party has the right to retain counsel and to cross-examine witnesses. *See* HRS §§ 91–9(a)(5), 91–10(3). As will be shown, this Court concludes that the administrative hearings before the Liquor Commission regarding the renewal of Plaintiff's liquor license were contested case proceedings, because hearings were required by law and Plaintiff's legal rights and duties as to its liquor license were determined in those hearings. Consistent with these being contested case proceedings, Plaintiff had a right to retain counsel and to cross-examine witnesses in the hearings.

newal application qualified as contested cases. The first proceeding stemmed from a noise complaint against Plaintiff, and the second proceeding arose when Plaintiff filed an application to amend the conditions on its license. (Compl. ¶¶ 11, 19.) The Liquor Commission Rules have the force and effect of law. *See* HRS § 281–17(4); Liquor Commission Rules 1–1, 1–2. They provide that, when a complaint is filed with the commission, the commission must conduct a hearing in accordance with HRS Chapter 91. Liquor Commission Rule 1–14. They further provide that applications for the amendment of conditions placed on a license must be heard at two separate hearings, a preliminary hearing and a public hearing. Liquor Commission Rules 1–1, 1–6(D). Under these rules, hearings were "required by law" for the proceedings in connection with the complaint against Plaintiff and Plaintiff's application to amend the conditions on its liquor license. *See* HRS § 91–5; (Compl. ¶¶ 14, 19). And, in such proceedings, a licensee's "legal rights, duties, or privileges" with respect to its liquor license are determined by the Liquor Commission. Specifically, legal rights are determined because a liquor license " 'authorizes the licensee to sell liquors ... for consumption on the premises.' " *E & J Lounge Operating Co. v. Liquor Comm'n of the City & County of Honolulu,* 118 Hawai'i 320, 332, 189 P.3d 432, 444 (2008) (quoting HRS § 281–31(f))

(brackets omitted). In addition, a liquor license imposes legal duties upon the licensee. *Id.* (citing HRS §§ 281–71 to –85). Accordingly, renewal proceedings before the Liquor Commission constituted "contested case[s]" under HRS § 91–14(a), and the Liquor Commission's decisions in those proceedings are therefore subject to the review pursuant to procedures prescribed by the statute. *See id.* (holding that the proceeding involved in applying for a liquor license constituted a contested case).

HRS § 91–14(b) directs that "proceedings for review shall be instituted in the circuit court within thirty days after the preliminary ruling or within thirty days after service of the certified copy of the final decision and order of the agency pursuant to rule of court." Plaintiff followed that provision, appealing the Liquor Commission's renewal decisions to the Hawai'i Third Circuit Court in Civ. Nos. 06–1–0189 and 07–1–0168. (Mot. to Dismiss, Exs. 1, 3.) In particular, Plaintiff challenged the Liquor Commission's June 1, 2006 decision not to renew its liquor license and its April 18, 2007 decision not to amend the conditions placed on the liquor license. (*See id.*) In the appeals, the Hawai'i Third Circuit Court's review is conducted without a jury and is confined to the record, as HRS Chapter 281 does not grant a trial de novo.[5] The circuit court may, however, take testimony if there are any irregulari-

---

5. Although this case does not involve the suspension or revocation of a liquor license, this Court notes that appeals from license suspensions or revocations were in some instances conducted by the circuit courts through a trial de novo pursuant to the prior version of HRS § 281–92. The statute presently provides that

[a]ny licensee ... aggrieved ... by any order suspending or revoking any license[ ] may appeal therefrom in the manner provided in [HRS Chapter] 91 to the circuit court of the circuit in which the liquor

commission ... making the order has jurisdiction and the judgment of the court shall be subject to review, subject to [HRS Chapter] 602, in the manner provided for civil appeals from the circuit courts.

HRS § 281–92. The statute previously included a provision stating that the appeal was " 'subject to such procedure and rules as may be prescribed by the court.' " *In re License of Sprinkle,* 40 Haw. 485, 490–91 (1954) (quoting 1941 Haw. Sp. Sess. L. Act 41, § 1 at 101). By virtue of that provision, some cir-

ties in the commission's procedure that are not shown in the record. *See id.* § 91–14(f). In deciding the appeals,

the court may affirm the decision of the agency or remand the case with instructions for further proceedings; or it may reverse or modify the decision and order if the substantial rights of the petitioners may have been prejudiced because the administrative findings, conclusions, decisions, or orders are:

(1) In violation of constitutional or statutory provisions; or

(2) In excess of the statutory authority or jurisdiction of the agency; or

(3) Made upon unlawful procedure; or

(4) Affected by other error of law; or

(5) Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or

(6) Arbitrary, or capricious, or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

*See id.* § 91–14(g). In its notices of appeal, Plaintiff has specifically requested that the Hawai'i Third Circuit Court reverse and vacate the Liquor Commission's decisions. (Mot. to Dismiss, Ex. 1 at 12, Ex. 3 at 9.)

While HRS § 281–17 does not state that all "available" administrative remedies must be exhausted like the provision that was at issue in *Booth,* 532 U.S. at 736, 121

S.Ct. 1819, it does declare that the Liquor Commission's decisions are unreviewable, "except as otherwise provided in [HRS Chapter 281] or [HRS Chapter] 91." In other words, the statute directs that review pursuant to HRS Chapters 281 and 91 is not simply an *available* remedy, but, rather, the *only* remedy. HRS § 91–14(a) does state that "nothing in this section shall be deemed to prevent resort to other means of review, redress, relief, or trial de novo, including the right of trial by jury, provided by law." *Id.* But that sentence does not "provide[ ]" any additional avenues to review the Liquor Commission's decision within the meaning of HRS § 281–17; it merely indicates that the sections of HRS Chapter 91 do not foreclose other forms of judicial review to which a person is otherwise entitled. The only forms of judicial review available to liquor licensees under HRS Chapter 281 are the ones specifically "provided" in that chapter and HRS Chapter 91. *See* HRS § 281–17. If such judicial review constitutes an "administrative" remedy, then Plaintiff would plainly be required by HRS § 281–17 to exhaust that remedy, irrespective of whether it provides for the recovery of damages. *Cf. Booth,* 532 U.S. at 741, 121 S.Ct. 1819. The issue is thus whether the judicial review prescribed by HRS Chapters 281 and 91 constitutes an "administrative" remedy.

## B. "Administrative" Remedy

■ Judicial review of an agency decision may constitute an "administrative"

---

cuit court judges decided to review suspension and revocation appeals from the liquor commission through a trial de novo. *Id.* at 490. In a 1954 case, the Hawai'i Supreme Court seemed to suggest that the statute was ambiguous as to whether the circuit courts could employ that procedure and that the circuit court judges' construction of the stat-

ute was a reasonable one. *Id.* But the statute was subsequently amended to eliminate the sentence granting the circuit court the authority to prescribe the applicable procedure and rules. *See* HRS § 281–92. The review procedures in suspension and revocation appeals are instead governed by HRS Chapter 91, which does not provide a trial de novo.

remedy if, in the course of such review, the court may modify the agency's decision and the case is not tried anew as a regular action at law. *See generally* 17A Charles Alan Wright, Edward H. Cooper & Vikram David Amar, *Federal Practice & Procedure* § 4233, at 177–82. This rule derives from four Supreme Court decisions. In the first case, *Prentis v. Atlantic Coast Line Co.*, 211 U.S. 210, 29 S.Ct. 67, 53 L.Ed. 150 (1908), a state commission in Virginia was charged with fixing railroad passenger rates and its orders were reviewable by a state appellate court. *Id.* at 224, 29 S.Ct. 67. The appellate court had the authority to reverse the commission's order and substitute its own order in the place of the commission's order. *Id.* In a proceeding before the commission, railroad companies objected to the new rates set by the commission. *Id.* at 223, 29 S.Ct. 67. Without appealing the commission's order to the state appellate court, the companies filed an action in federal court, asserting claims under the Fourteenth Amendment, and obtained decrees enjoining the commission from publishing or taking any steps to enforce its order fixing rates. *Id.* at 223, 29 S.Ct. 67.

The Supreme Court reversed, holding that the companies should have appealed to the appellate court before filing their bills in federal court. *Id.* at 229–32, 29 S.Ct. 67. The Court distinguished between the judicial and legislative functions, explaining that:

> A judicial inquiry investigates, declares and enforces liabilities as they stand on present or past facts and under laws supposed already to exist. That is its purpose and end. Legislation on the other hand looks to the future and changes existing conditions by making a new rule to be applied thereafter to all or some part of those subject to its power.

*Id.* at 226, 29 S.Ct. 67. The Court explained that establishing the rates was a legislative act and that the state appellate court's function in reviewing such rates was not judicial, but legislative, in character. *Id.* at 226–27, 231, 29 S.Ct. 67. In light of principles of comity and equitable discretion, the Court concluded that the federal court should not have acted until the state legislative process was finalized through an appeal to the state appellate court. *Id.* at 230, 29 S.Ct. 67; *see also Lane v. Wilson*, 307 U.S. 268, 274, 59 S.Ct. 872, 83 L.Ed. 1281 (1939) (citing *Prentis* for the proposition that "the state legislative process, sometimes exercised through administrative powers conferred on state courts, must be completed before resort to federal courts can be had").

In the second case, *Bacon v. Rutland Railroad Co.*, 232 U.S. 134, 34 S.Ct. 283, 58 L.Ed. 538 (1914), a railroad company filed a bill in federal court to enjoin the enforcement of an order concerning one of the company's passenger stations that was entered by a state commission in Vermont. *Id.* at 136, 34 S.Ct. 283. The commission moved to dismiss the bill on the ground that, because the company had failed to exercise its right to appeal the order to a state appellate court as was provided by state law, it should not be heard to complain elsewhere. *Id.* at 136, 34 S.Ct. 283. Under the state law, the appellate court could correct any errors, could reverse or affirm the commission's orders, or could remand a case to the commission with mandates as to what law or equity required. *Id.* at 137–38, 34 S.Ct. 283. The lower court denied the motion and entered a decree enjoining the enforcement of the order. *Id.* at 136, 34 S.Ct. 283. The Su-

preme Court affirmed, explaining that the case was distinguishable from *Prentis*. *Id.* at 137, 34 S.Ct. 283. The Court observed that, before *Prentis* could apply, it must be established that legislative powers were conferred upon the state appellate court. *Id.* The Court concluded that the state law did not attempt to confer legislative powers upon the state appellate court and that the remedy provided by the statute was purely judicial, because it merely exonerated individuals from orders that exceeded the law. *Id.* at 138, 34 S.Ct. 283.

The third case, *Porter v. Investors' Syndicate*, 286 U.S. 461, 52 S.Ct. 617, 76 L.Ed. 1226, *adhered to on reh'g*, 287 U.S. 346, 53 S.Ct. 132, 77 L.Ed. 354 (1932), involved an investment company that was licensed to do business in Montana by a state commissioner. 286 U.S. at 464, 52 S.Ct. 617. By state law, the commissioner was authorized to grant or revoke investment company permits, and his decisions were appealable to a state district court. *Id.* at 465 n. *, 468, 52 S.Ct. 617. In such a proceeding, the commissioner would be designated as the defendant, and the court could vacate and set aside the commissioner's findings or decision on the ground that they were unjust or unreasonable. *Id.* The rules of pleading and procedure were the same as were provided for the trial of equitable actions and, upon hearing an appeal, the district court could set aside, modify, or confirm the findings or decision as the evidence, rules, and equity might have required. *Id.* Pursuant to his authority to revoke permits, the commissioner promulgated a rule regulating the issuance of investment certificates and asserted his intention to revoke the investment company's permit if it failed to obey the rule. *Id.* at 466–67, 52 S.Ct. 617. Without filing an appeal to the state district court, the investment company brought an action in

federal district court to enjoin the commissioner from revoking its permit for failing to comply with the rule. *Id.* The district court granted the injunction, concluding that the state law violated the Fourteenth Amendment and the Montana Constitution. *Id.*

On appeal, the Supreme Court held that the investment company had failed to exhaust its administrative remedy before applying to the federal district court for injunctive relief. *Id.* at 468, 52 S.Ct. 617. The Court reasoned that the granting and revocation of permits was an exercise by the commissioner of delegated legislative power. *Id.* The Court explained that the function of the state district court under the state law was "not solely judicial, that is, to set aside a decision of the commissioner if arbitrary or unreasonable and hence violative of constitutional rights." *Id.* The Court observed that the duty was laid on the court to examine the evidence presented and to set aside, modify, or affirm the commissioner's order. *Id.* Citing *Prentis*, the Court concluded that "the legislative process remains incomplete until the action of the [state] court shall have become final." *Id.* (citing, *inter alia*, *Prentis*, 211 U.S. at 229–30, 29 S.Ct. 67). The Court further explained that "the capacity in which the [state] court acts is none the less administrative because the proceeding is designated as a suit in equity instead of by appeal." *Id.* The Court reasoned that, under the state law, "the administrative proceeding is not complete until the [state] court shall have acted in revision and correction of the commissioner's decision." *Id.*

In the fourth case, *City Bank Farmers' Trust Co. v. Schnader*, 291 U.S. 24, 54 S.Ct. 259, 78 L.Ed. 628 (1934), the plaintiff was assessed an inheritance tax by a state

department of revenue in Pennsylvania. *Id.* at 26, 54 S.Ct. 259. By state law, individuals unsatisfied with a tax appraisal could appeal to a state court, which could determine all questions, including the valuation and the liability of the appraised estate for the tax, and would try the case as an ordinary action. *Id.* at 27, 30, 54 S.Ct. 259. Without filing such an appeal, the plaintiff filed an action in federal district court to enjoin the imposition and collection of the inheritance tax. *Id.* at 25, 54 S.Ct. 259. The district court dismissed the action for lack of equity jurisdiction. *Id.* at 27–28, 54 S.Ct. 259.

The Supreme Court reversed and held, among other things, that the plaintiff did not have to pursue an appeal to the state court before seeking injunctive relief in federal court. *Id.* at 29–30, 54 S.Ct. 259. The Court distinguished *Prentis* and *Porter* on the basis that the statutes in those cases delegated legislative power of regulation to an administrative body and vested a revisory power in a court. *Id.* at 30, 54 S.Ct. 259. The Court noted that "the action of the court in such a matter is legislative rather than judicial, so that one who has not pursued the legislative process to a conclusion cannot turn to a court of equity for relief from a regulatory order which is not the final word of the constituted state authority." *Id.* The Court explained that, in the case before it, while the action of the appraiser is purely administrative, the function of the state court on appeal is judicial in character because, when the case is brought into the court, the Commonwealth of Pennsylvania becomes the plaintiff and the taxpayer the defendant and the action is tried as an ordinary action, resulting in a judgment, which is binding on the parties, subject only to an appeal to a higher state court. *Id.* According to the Court, those procedures were judicial and characteristic of a suit or action at law. *Id.* The Court further explained that, if the state court only had the right to revise the valuation of the appraiser and precluded it from considering any other question, its proceeding would be purely administrative. *Id.* at 33, 54 S.Ct. 259. The Court observed that, if that were the case, then the plaintiff would be required to pursue its administrative remedy at all events in which the valuation was subject to controversy. *Id.*

Returning to the case at hand, Plaintiff challenges the Liquor Commission's decision not to renew its liquor license and the commission's subsequent decision to renew the license with conditions. (Compl. ¶¶ 21–36.) Like the commissioner's function of granting and revoking business investment licenses in *Porter*, 286 U.S. at 468, 52 S.Ct. 617, the Liquor Commission's role in renewing liquor licenses is administrative in character. *See also Federal Radio Comm'n v. Gen. Elec. Co.*, 281 U.S. 464, 50 S.Ct. 389, 74 L.Ed. 969 (1930) (observing that a commission's authority to grant and renew radio station licenses was purely administrative). The issue is whether the Hawai'i Third Circuit Court's review of the Liquor Commission's decision is similarly administrative in character. Like the state court's review in *Porter*, 286 U.S. at 465 n. *, 468, 52 S.Ct. 617, the circuit court's review is conducted without a jury and is generally confined to the record, *see* HRS §§ 91–14(f). The scope of the court's review is thus far more restricted than the state court's review in *City Bank Farmers Trust Co.*, 291 U.S. at 30, 33, 54 S.Ct. 259, where the proceeding was, in effect, an ordinary action at law in which a party could raise any issue.

■ In contrast to the narrow scope of its review, the circuit court's dispositional

authority is broad. Unlike the state court in *Bacon,* 232 U.S. at 137–38, 34 S.Ct. 283, the circuit court's function on appeal is "not solely judicial," *see Porter,* 286 U.S. at 468, 52 S.Ct. 617, as it is not limited to either reversing or affirming the agency's decision, *see* HRS § 91–14(g). Rather, it may additionally modify the Liquor Commission's decision, *see* HRS § 91–14(g), much like how state courts could revise the agency decisions in *Prentis,* 211 U.S. at 224, 29 S.Ct. 67, and *Porter,* 286 U.S. at 465 n. *, 468, 52 S.Ct. 617. *See also Federal Radio Comm'n,* 281 U.S. at 467, 50 S.Ct. 389 (observing that a District of Columbia statute, which provided that the Court of Appeals of the District Columbia could review decisions of a commission granting or denying radio station licenses and "alter or revise" such decisions, rendered the court a "superior and revising agency in the same field"). As was the case in *Porter,* 286 U.S. at 471, 52 S.Ct. 617, the administrative proceeding is simply not complete until the Hawai'i Third Circuit Court has had an opportunity to act in revision of the Liquor Commission's decisions. The court's review of the Liquor Commission's renewal decisions pursuant to HRS § 91–14 is thus partly administrative in character.

This construction of HRS § 91–14 is confirmed by Hawai'i Supreme Court's decision in *In re Doe Children,* 96 Hawai'i 272, 30 P.3d 878 (2001). There, one of the plaintiffs was a teenage female who had a number of problematic behaviors, and the state department of human services consequently petitioned for family court supervision. *Id.* at 278–79, 30 P.3d at 884–85. At the hearing, the plaintiff's mother explained that the plaintiff had been to treatment facilities in Hawai'i, but that the treatment had been ineffective. *Id.* at 279, 30 P.3d at 885. The plaintiff's mother

further explained that she therefore planned to send the plaintiff to a treatment center in Colorado. *Id.* The plaintiff's court-appointed guardian ad litem asked for a continuance so that the state department of health could be named as a party and ordered to pay for the plaintiff's treatment. *Id.* At the next hearing, the department of health asserted that it would provide treatment for the plaintiff in Hawai'i and that, under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 *et seq.,* the plaintiff's mother would have to follow an administrative process in order to obtain reimbursement for the cost of sending the plaintiff to the treatment center in Colorado. *Id.* The family court disagreed as to the latter point and entered an order pursuant to the IDEA requiring the department of health to pay for the costs of providing an appropriate program to the plaintiff outside of Hawai'i. *Id.* at 280, 30 P.3d at 886.

On appeal, the question before the supreme court was whether the plaintiff had to exhaust her administrative remedies under the IDEA in order to obtain reimbursement. *Id.* at 287, 30 P.3d at 893. The court outlined the IDEA and its implementation by the State of Hawai'i as follows. Under the IDEA, where a child's parents have placed the child in a private facility because the parent believed that the state educational agency has failed to provide a free appropriate public education ("FAPE"), which includes special education and related services, the state may, under certain circumstances, be required to pay for the private placement. *Id.* at 278, 30 P.3d at 884 (citing 20 U.S.C. § 1412(a)(10)(C)(ii)). The IDEA requires that the state have an opportunity to evaluate complaints regarding the provision of a FAPE and that the opportunity include the possibility of conducting an impartial

due process hearing provided according to state law or regulations. *Id.* (citing 20 U.S.C. § 1415(f)(1)). Parents have the right to seek judicial review of any final administrative decision by bringing a civil action in any state court of competent jurisdiction or federal district court. *Id.* (quoting 20 U.S.C. § 1415(i)(2)(A)). The state established the required review process for FAPE complaints through a statutory and regulatory scheme, which afforded a due process hearing before the department of health and an appeal from the department's decision to any state court of competent jurisdiction or federal district court. *Id.* at 287, 30 P.3d at 893 (citing HRS § 302A–443(a); Hawai'i Administrative Rules ("HAR") § 8–56–78).

After laying out the foregoing framework, the supreme court explained that "[e]xhaustion of this administrative process is mandatory prior to seeking judicial review." *Id.* The court observed that the plaintiff's mother did not seek payment for the services at issue through the administrative remedies available to her. *Id.* The court concluded the family court could not determine the department of health's obligation to pay for the disputed services, because the plaintiff's mother had failed to exhaust her administrative remedies. *Id.* The court later reiterated its holding as follows:

> [W]e hold that the family court lacked jurisdiction to order DOH to pay for Children's services at issue in these cases because [department of health's] legal obligation to pay for the services under the [IDEA], 20 U.S.C. § 1400 *et. seq.*, had not been established through

the *administrative process* mandated by 20 U.S.C. § 1415(f)(1), HRS § 302A–443(a), and HAR §§ 8–36 or 8–56, or by *judicial review* of any resulting administrative decision pursuant to 20 U.S.C. § 1415(i)(2)(A) or *HRS § 91–14(b)*.

*Id.* at 289, 30 P.3d at 895 (emphases added).

It follows from the supreme court's holding that "judicial review," pursuant to HRS § 91–14, of a decision by department of health in response to a FAPE complaint is part of the "administrative process." *See id.* In this case, HRS § 281–17 directs that review of the Liquor Commission's decisions be conducted pursuant to HRS Chapter 91. And, because the commission's decisions to deny renewal of Plaintiff's license and to renew the license with conditions were made in the context of contested case proceedings, the Hawai'i Third Circuit Court's review is governed by HRS § 91–14. Thus, like the "judicial review" in *Doe*, 96 Hawai'i at 287, 289, 30 P.3d at 893, 895, the Hawai'i Third Circuit Court's review is part of the "administrative process." Plaintiff must therefore exhaust its administrative remedy in the circuit court before its may pursue its state law claims, as required by HRS § 281–17. *See id.* at 287, 30 P.3d at 893; *Booth*, 532 U.S. at 741, 121 S.Ct. 1819. Accordingly, this Court grants Defendants' motion to dismiss Plaintiff's state law claims under the Hawai'i Constitution, HRS Chapter 281, and the Liquor Commission Rules. *See Porter*, 286 U.S. at 471, 52 S.Ct. 617; (Compl. ¶¶ 21–36).[6]

## II. Primary Jurisdiction

Defendants also maintain that the Complaint should be dismissed because this

---

[6] Because this Court concludes that Plaintiff has failed to exhaust its administrative remedies, as required by HRS § 281–17, it follows that this Court does not have subject-matter jurisdiction to decide Plaintiff's state law claims. For that reason, this Court declines to address Defendants' contention that Plaintiff does not have a private right of action under HRS Chapter 281 or the Liquor Commission Rules. (*See* Mem. in Supp. 23.) This

Court lacks subject matter jurisdiction, as the Liquor Commission and the Hawai'i Third Circuit Court have primary jurisdiction in this matter. (Mem. in Supp. 6.) They insist that considerations of uniformity and consistency dictate that the commission and the circuit court have primary jurisdiction over Plaintiff's claims, as those institutions are better equipped than this Court to address this matter, particularly in light of their specialization, insight gained through experience, and more flexible procedures. (*Id.*) On the other hand, Plaintiff asserts that Defendants should be estopped from asserting that this Court lacks primary jurisdiction, because it was they who removed this case from the Hawai'i Third Circuit Court to this Court. (Mem. in Opp'n 4.) Plaintiff also contends, in effect, that this Court has jurisdiction to hear its 42 U.S.C. § 1983 claims. (*Id.* at 5.) Plaintiff finally asserts that the doctrine of primary jurisdiction does not compel dismissal in this case, because this Court has the ability to certify important state law questions to the Hawai'i Supreme Court. (*Id.* at 5–6.)

■■■ Contrary to what Defendants believe (Mem. in Supp. 6), " '[t]he doctrine of primary jurisdiction, despite what the term may imply, does not speak to the jurisdictional power of the federal courts.' " *United States v. Campbell,* 42 F.3d 1199, 1202 (9th Cir.1994) (quoting *United States v. Bessemer & Lake Erie R. Co.,* 717 F.2d 593, 599 (D.C.Cir.1983)). It is instead " 'a prudential doctrine under which courts

may, under appropriate circumstances, determine that the initial decisionmaking responsibility should be performed by the relevant agency rather than the courts.' " *County of Santa Clara v. Astra USA, Inc.,* 540 F.3d 1094, 1108 (9th Cir.2008) (quoting *Syntek Semiconductor Co. v. Microchip Tech. Inc.,* 307 F.3d 775, 780 (9th Cir. 2002)). Under the doctrine, "the court may suspend review of a claim if its resolution involves issues that have been placed within the jurisdiction of an administrative body." *Eckard Brandes, Inc. v. Riley,* 338 F.3d 1082, 1087 (9th Cir.2003). "The doctrine applies when protection of the integrity of a regulatory scheme dictates preliminary resort to the agency which administers the scheme." *Cost Mgmt. Servs. v. Washington Natural Gas Co.,* 99 F.3d 937, 949 (9th Cir.1996). The Ninth Circuit has instructed that

"there are four factors uniformly present in cases where the doctrine properly is invoked: (1) the need to resolve an issue that (2) has been placed by Congress within the jurisdiction of an administrative body having regulatory authority (3) pursuant to a statute that subjects an industry or activity to a comprehensive regulatory scheme that (4) requires expertise or uniformity in administration."

*Id.* (quoting *United States v. Gen. Dynamics Corp.,* 828 F.2d 1356, 1362 (9th Cir. 1987)) (emphasis omitted) (utilizing this standard in deciding whether a state agency had primary jurisdiction).[7]

---

Court doubts that there is any such private right of action, but makes no ruling on the same at this time.

In addition, this Court notes that the findings by the Hawai'i Third Circuit Court in the administrative appeal or by the Liquor Commission, in the event that the appeal is not pursued, may have a preclusive effect in this

action. *See Misischia v. Pirie,* 60 F.3d 626, 628–30 (9th Cir.1995); *Leong v. Hilton Hotels Corp.,* 698 F.Supp. 1496, 1498–1501 (D.Haw. 1988).

**7.** For a discussion of the distinction between the doctrine of primary jurisdiction and the requirement of exhaustion of administrative

Here, in light of the exhaustion of administrative remedies discussion in the preceding section, what remains of Plaintiff's Complaint is its § 1983 equal protection and due process claims. The issue is therefore whether the Hawai'i Third Circuit Court and the Liquor Commission have primary jurisdiction with respect to the constitutional issues involved in those claims. "[W]here the only question is whether it is constitutional to fasten the administrative procedure onto the litigant, the administrative agency may be defied and judicial relief sought as the only effective way of protecting the asserted constitutional right." *Pub. Util. Comm'n of California v. United States*, 355 U.S. 534, 540, 78 S.Ct. 446, 2 L.Ed.2d 470 (1958). The specific question here is whether the Liquor Commission's decision not to renew Plaintiff's liquor license and its later decision to renew the license with conditions offended Plaintiff's equal protection and due process rights. (Compl. ¶¶ 21–28.) This Court perceives no need for the Hawai'i Third Circuit Court or the Liquor Commission to resolve that constitutional question. *See Knight v. Browne*, No. C07–0738MJP, 2007 WL 2900279, at *4, 2007 U.S. Dist. LEXIS 73528, at *12 (D.Wash. Oct. 2, 2007) (relying on *Pub. Util. Comm'n of California*, 355 U.S. at 539, 78 S.Ct. 446, and concluding that the defendant, a state board, did not have primary jurisdiction to decide whether a statute unconstitutionally infringed upon the plaintiff's free speech rights). The Hawai'i Third Circuit Court has no more expertise in deciding federal constitutional questions than this Court, and the Liquor Commission is simply not "qualified to adjudicate the propriety of its own action," *HOH Corp. v. Motor Vehicle Indus. Licensing Bd.*, 69 Haw. 135, 143, 736 P.2d 1271, 1276 (1987); *see also Pub. Util. Comm'n of California*, 355 U.S. at 540, 78 S.Ct. 446. In consequence, this Court denies Defendants' motion to dismiss Plaintiff's equal protection and due process claims on the basis that the Hawai'i Third Circuit Court and the Liquor Commission have primary jurisdiction.

### III. The Fifth Amendment

Defendants contend that Plaintiffs' due process and equal protection claims in counts I and II of the Complaint fail to state a claim upon which relief can be granted insofar as the claims are premised upon the Fifth Amendment. (Mem. in Supp. 20.) Plaintiff concedes that it has no civil rights claim under the Fifth Amendment. (Mem. in Opp'n 8.) Plaintiff has not, however, withdrawn its Fifth Amendment claim, and this Court will therefore address Defendants' contention. "The Due Process Clause of the Fifth Amendment and the equal protection component thereof apply only to actions of the federal government—not to those of state or local governments." *Lee v. City of Los Angeles*, 250 F.3d 668, 687 (9th Cir.2001). Plaintiff has not alleged that Defendants were at any point acting on behalf of the federal government. Accordingly, this Court dismisses counts I and II to the extent that they are premised upon the Fifth Amendment. *See id.*

### IV. The Fourteenth Amendment

Defendants essentially posit that Plaintiff has failed to sufficiently state § 1983 equal protection and due process claims in certain respects. (Mem. in Supp. 21–23.) "To state a claim under § 1983, a plaintiff must both (1) allege the depriva-

remedies, *see Syntek Semiconductor Co.*, 307 F.3d at 780–81.

tion of a right secured by the federal Constitution or statutory law, and (2) allege that the deprivation was committed by a person acting under color of state law." *Anderson v. Warner,* 451 F.3d 1063, 1067 (9th Cir.2006). Viewed in light of this standard, Defendants' argument is essentially that Plaintiff has failed to allege the first element in the equal protection claim and the second element with respect to the County of Hawai'i. (*See* Mem. in Supp. 21–23.)

## A. Deprivation of the Right to Equal Protection

With respect to Plaintiff's equal protection claim, Defendants assert that Plaintiff has failed to establish that, as a limited liability company, it is a member of a protected class requiring equal protection. (*Id.*) Plaintiff counters, in effect, that it is not asserting a "protected class," but a "class of one," equal protection claim. (Mem. in Opp'n 8–9.)

■■■ As a general matter, " '[t]o state a claim under 42 U.S.C. § 1983 for a violation of the Equal Protection Clause of the Fourteenth Amendment a plaintiff must show that the defendants acted with an intent or purpose to discriminate against the plaintiff based upon membership in a protected class.' " *Lee,* 250 F.3d at 686 (quoting *Barren v. Harrington,* 152 F.3d 1193, 1194 (9th Cir.1998)). But, "[w]hen an equal protection claim is premised on unique treatment rather than on a classification, the Supreme Court has described it as a 'class of one' claim." *N. Pacifica LLC v. City of Pacifica,* 526 F.3d 478, 486 (9th Cir.2008). "In order to claim a violation of equal protection in a class of one case, the plaintiff must establish that the [defendant] intentionally, and without rational basis, treated the plaintiff differently from

others similarly situated." *Id.* Thus, in the case at bar, the fact that Plaintiff has not asserted that it is a member of a protected class is not fatal to its equal protection claim. The question becomes whether it has stated a class of one claim upon which relief can be granted.

The Supreme Court reviewed a Rule 12(b)(6) dismissal of a class of one claim in *Willowbrook v. Olech,* 528 U.S. 562, 120 S.Ct. 1073, 145 L.Ed.2d 1060 (2000) (per curiam). There, the plaintiff and her late husband asked a municipality to connect their property to the municipal water supply. *Id.* at 563, 120 S.Ct. 1073. The municipality initially conditioned the connection on the couple granting it a thirty-three-foot easement. *Id.* They objected, asserting that the municipality had only required a fifteen-foot easement from other property owners seeking access to the water supply. *Id.* After a three-month delay, the municipality relented and agreed to provide a connection in exchange for a fifteen-foot easement. *Id.* Thereafter, the plaintiff sued the municipality, asserting that its demand of an additional eighteen-foot easement violated the Equal Protection Clause. *Id.* She further alleged that the demand of the thirty-three-foot easement was irrational and wholly arbitrary, that it was motivated by ill will as a result of an unrelated and successful lawsuit, and that the municipality had acted with intent to deprive her of her rights. *Id.* The district court dismissed the complaint for failure to state a cognizable claim under the Equal Protection Clause. *Id.* at 563, 120 S.Ct. 1073. The Seventh Circuit reversed, "holding that a plaintiff can allege an equal protection violation by asserting that state action was motivated solely by a 'spiteful effort to "get" him for reasons wholly unrelated to any legitimate state objective.' " *Id.* at 564, 120 S.Ct. 1073 (quoting 160 F.3d 386, 387 (7th Cir.1998)).

The Supreme Court affirmed on different grounds. *Id.* at 564–65, 120 S.Ct. 1073. It held that the complaint had sufficiently alleged a class of one claim, because the complaint could be fairly construed as alleging that the municipality intentionally demanded a thirty-three-foot easement as a condition of connecting the plaintiff's property to the municipal water supply where the municipality required only a fifteen-foot easement from other similarly situated property owners. *Id.* at 565, 120 S.Ct. 1073. The Court further reasoned that the complaint alleged that the municipality's demand was irrational and wholly arbitrary and that the municipality ultimately connected the plaintiff's property after receiving a clearly adequate fifteen-foot easement. *Id.*

In this case, Plaintiff asserts that the allegations in the Complaint sufficiently state a class of one claim. (Mem. in Opp'n 8–9.) The Complaint alleges that Defendants treated Plaintiff differently from how they treated other liquor licensees without any legitimate or rational basis for such disparate treatment. (Compl. ¶ 26.) It further asserts that the disparate treatment was fueled by animus toward Plaintiff and was not rationally related to a legitimate government interest. (*Id.*)

■■ Defendants respond that the foregoing allegations are inadequate because a heightened pleading standard applies to class of one claims. (Mem. in Supp. 4.) They cite a number of cases from outside the Ninth Circuit requiring allegations of "illegitimate animus." (*Id.* (citing, *inter alia, Jennings v. Stillwater,* 383 F.3d 1199 (10th Cir.2004)).). But they fail to acknowledge that, in *Engquist v. Oregon Department of Agriculture,* 478 F.3d 985, 993 n. 1 (9th Cir.2007), *aff'd,* 553 U.S. 591, 128 S.Ct. 2146, 170 L.Ed.2d 975 (2008), the

Ninth Circuit noted that such a requirement would be inconsistent with, *inter alia,* the Supreme Court's decision in *Olech,* 528 U.S. at 565, 120 S.Ct. 1073 (2000). Indeed, in *Olech,* although the plaintiff alleged that municipality's demand for a thirty-three-foot easement was motivated by ill will and although the Seventh Circuit held that Plaintiff had stated a claim for that reason, the Supreme Court did not rest its holding that she had sufficiently stated a class of one claim upon that allegation. *See* 528 U.S. at 563–65, 120 S.Ct. 1073; *see also DeMuria v. Hawkes,* 328 F.3d 704, 707 (2d Cir.2003). As such, in the present matter, Plaintiff's class of one claim need not include allegations of "illegitimate animus."

■■ Defendants additionally assert that Plaintiff fails to sufficiently allege that it was treated differently than similarly situated individuals. (Mem. in Supp. 4.) They maintain that some cases have defined "similarly situated" as "prima facie identical." (*Id.*) Such cases also appear to require that, at the pleading stage, a plaintiff must allege specific instances in which a similarly situated individual was treated differently. *See Griffin Indus. v. Irvin,* 496 F.3d 1189, 1205 (11th Cir.2007) (quoting *GJR Invs., Inc. v. County of Escambia,* 132 F.3d 1359, 1367–68 (11th Cir. 1998)). Under this standard, mere allegations that "others" were treated differently will not suffice. *See id.* The Second Circuit has, however, explained that, after *Olech,* a complaint need not identify actual instances in which others have been treated differently and that it is enough to make more general allegations that similarly-situated individuals were so treated. *See DeMuria,* 328 F.3d at 707. Indeed, in *Olech,* the Court observed in reciting the background facts that the municipality had

required a fifteen-foot easement from "other property owners seeking access to the water supply." 528 U.S. at 563, 120 S.Ct. 1073. And the Court concluded that the complaint sufficiently stated a class of one claim, because the complaint could fairly be construed as asserting that the municipality had demanded a thirty-three-foot easement as a condition of connecting the plaintiff's property to the municipal water supply where the municipality required only a fifteen-foot easement from "other similarly situated property owners." *Id.* at 565, 120 S.Ct. 1073.

 In the case at hand, Plaintiff alleges that, under the Equal Protection Clause, the government must treat similarly situated individuals similarly. (Compl. ¶ 27.) It asserts that, in this case, Defendants treated it differently from how they treated other liquor licensees without any legitimate or rational basis for such disparate treatment. (*Id.*) Plaintiff appears to allege that it was treated differently from such individuals when Defendants decided not to renew its liquor license and when they later renewed the license with certain conditions that Plaintiff found objectionable. (*See id.* ¶¶ 14, 17–20, 24–25, 27.) Although the Complaint does not specifically allege that the "other liquor licensees" were similarly situated to Plaintiff, there is a reasonable inference that they were, given that Plaintiff alleges that the Equal Protection Clause requires that similarly situated individuals be treated similarly, that Defendants treated Plaintiff differently than other licensees, and that they violated Plaintiff's equal protection rights on that basis. (*See id.* ¶¶ 27–28.) Accordingly, this Court concludes that Plaintiff has sufficiently alleged that Defendants treated it differently than similarly situated individuals.

## B. Under Color of Official Policy

Defendants additionally assert that Plaintiff does not allege that County of Hawaii's policies or customs caused the alleged harm to its equal protection and due process rights. (Mem. in Supp. 22–23.) Plaintiff responds, in effect, that it has alleged that its constitutional injury resulted from execution of government policy, because the Liquor Commission's decisions constitute policymaking. (Mem. in Opp'n 9.)

 Under *Monell v. Department of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), a municipality is subject to liability under § 1983 when, "under color of some official policy, [it] 'causes' an employee to violate another's constitutional rights." *Id.* at 692, 98 S.Ct. 2018. In other words, the case directs that " § 1983 claims may be brought against municipalities only if a plaintiff demonstrates injury resulting from 'execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy.'" *Dietrich v. John Ascuaga's Nugget,* 548 F.3d 892, 900 (9th Cir.2008) (quoting *Monell,* 436 U.S. at 694, 98 S.Ct. 2018). There are

> four conditions that must be satisfied in order to establish municipal liability for failing to act to preserve constitutional rights: (1) that the plaintiff possessed a constitutional right of which he was deprived; (2) that the municipality had a policy; (3) that this policy amounts to deliberate indifference to the plaintiff's constitutional right; and (4) that the policy is the moving force behind the constitutional violation.

*Id.* In this case, Defendants seem to focus on the second and fourth elements in their

argument that Plaintiff has failed to allege that the County of Hawaii's policies or customs caused the alleged harm. (*See* Mem. in Supp. 22–23.) But, aside from their equal protection "protected class" argument, which is addressed in the preceding section, Defendants do not seriously advance any further contentions with respect to the first element under *Dietrich.* (*See id.*) In other words, they offer no additional arguments that Plaintiff has failed to allege that it was deprived of its rights to equal protection and due process.[8] (*See id.*) This Court will therefore assume for purposes of resolving Defendants' contentions that Plaintiff's allegations are sufficient in that regard.

As to the second element under *Dietrich,* "a 'policy' within the meaning of § 1983 is not limited to official legislative action." *Thompson v. Los Angeles,* 885 F.2d 1439, 1443 (9th Cir.1989). "[A] decision properly made by a local governmental entity's authorized decisionmaker—i.e., an official who 'possesses final authority to establish [local government] policy with respect to the [challenged] action'—may constitute official policy." *Id.* (quoting *Pembaur v. City of Cincinnati,* 475 U.S. 469, 481, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986) (plurality opinion)) (brackets in original). " 'Authority to make municipal policy may be granted directly by legislative enactment or may be delegated by an official who possesses such authority, and of course whether an official had final policymaking authority is a question of state law.' " *Id.* (quoting *City of St. Louis v. Praprotnik,* 485 U.S. 112, 124, 108 S.Ct. 915, 99 L.Ed.2d 107 (1988) (plurality opinion)).

■ In the case at hand, the issue is thus whether the Liquor Commission is the "authorized decisionmaker" of the County of Hawai'i with regard to the renewal of liquor licenses under of Hawai'i law. HRS Chapter 281 permits the counties of the State to create liquor commissions. HRS § 281–11(a). Through its charter, the County of Hawai'i established a department of liquor control, which includes the Liquor Commission and which comes under the general supervision and control of the mayor. Hawai'i County Charter §§ 7–3.1, 7–3.5 (2006). The Liquor Commission has "sole jurisdiction, power, authority, and discretion ... [t]o grant, refuse, suspend, and revoke any licenses for the manufacture, importation, and sale of liquors." HRS § 281–17(1). When a licensee applies to renew its license, the Liquor Commission "may revoke, suspend, or place conditions or restrictions on [the] license." *Id.* § 281–61(b). The commission's exercise "of the power, authority, and discretion vested in it pursuant to [HRS Chapter 281] [is] final and [is] not be reviewable by or appealable to any court or tribunal, except as otherwise provided in [the] chapter or [HRS Chapter] 91." *Id.* § 281–17. In light of HRS Chapter 281 and the Hawai'i County Charter, this Court concludes that the Liquor Commission is the County of Hawaii's "authorized decisionmaker" with respect to

---

8. In its memorandum in opposition, Plaintiff asserts that the allegations of its equal protection claim are sufficient to plead equal protection *and* due process claims. (Mem. in Opp'n 8 (citing Compl. ¶¶ 27–28).) In their reply, Defendants counter that Plaintiff's "conclusory, ambiguous, and insufficient" allegations in its equal protection claim are insufficient to support a valid due process claim. (Reply 3–4 (citing Compl. ¶¶ 27–28).) At no point, however, do Defendants assert that Plaintiff's due process allegations (*see* Compl. ¶¶ 21–24) fail to state the elements of a due process claim. (*See* Mem. in Supp. 21–23; Reply 3–4.) As such, this Court does not address that issue.

liquor licenses. Its decisions in such matters thus constitute official "policy" within the meaning of § 1983.

The remaining question is whether, under the fourth *Dietrich* element, 548 F.3d at 900, such "policy" was the moving force behind the alleged due process and equal protection violations. (*See* Mem. in Supp. 22.) "Where the action taken or directed by the municipality or its authorized decisionmaker itself violates federal law, resolving issues of fault and causation is 'straightforward' because proof of such a violation 'establishes that … the municipal action was the moving force behind the injury of which the plaintiff complains.'" *Harper v. City of Los Angeles*, 533 F.3d 1010, 1026 (9th Cir.2008) (quoting *Bd. of County Comm'rs v. Brown*, 520 U.S. 397, 404–05, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997)); *see also Bateson v. Geisse*, 857 F.2d 1300, 1304 (9th Cir.1988) (directing that a plaintiff may establish that a municipality's policy was the "moving force" of a constitutional violation by showing "'some kind of direct personal participation in the deprivation'") (quoting *Merritt v. Mackey*, 827 F.2d 1368, 1371 (9th Cir.1987)). In *Bateson*, for example, a city council and its members denied the plaintiff a building permit even though he had satisfied all requirements therefor. 857 F.2d at 1302. The Ninth Circuit held that the council's decision to withhold the permit violated the plaintiff's right to substantive due process. *Id.* at 1303. The court further held that the city was liable because the city council's decision to withhold the building permit represented government "policy" and because such policy was the "moving force" behind the substantive due process violation. *Id.* at 1304–05. The court observed that the city council had personally inflicted the plaintiff's constitutional injury and caused economic harm. *Id.* at 1304.

■ Coming back to the present matter, Plaintiff alleges that its rights to due process and equal protection were offended by the Liquor Commission's decision not to renew its license and the commission's subsequent decision to renew the license with conditions. (Compl. ¶¶ 21–28.) Plaintiff thus alleges that the "action taken … by [the County of Hawaii's] authorized decisionmaker itself violate[d] federal law." *See Harper*, 533 F.3d at 1026. As such, Plaintiff has adequately stated that the County of Hawaii's policy was the moving force of the alleged due process and equal protection violations. *See Bateson*, 857 F.2d at 1304. Hence, this Court denies Defendants' motion to dismiss Plaintiff's § 1983 Fourteenth Amendment claims in counts I and II of the Complaint.

## V. Capacity to be Sued and Indispensable Party

Defendants maintain, in effect, that the Liquor Commission does not have the capacity to be sued. (*See* Mem. in Supp. 26.) Plaintiff does not appear to dispute that the Liquor Commission lacks such capacity. (*See* Mem. in Opp'n 11.)

■ "The capacity of a governmental body to be sued in the federal courts is governed by the law of the state in which the district court is held." *Avery v. County of Burke*, 660 F.2d 111, 113–14 (4th Cir.1981) (citing Fed.R.Civ.P. 17(b)); *see also Shaw v. California Dep't of Alcoholic Beverage Control*, 788 F.2d 600, 604 (9th Cir.1986). "In order for a plaintiff to sue a city department, it must 'enjoy a separate legal existence.'" *Darby v. Pasadena Police Dep't*, 939 F.2d 311, 314 (5th Cir.1991) (quoting *Mayes v. Elrod*, 470 F.Supp. 1188, 1192 (N.D.Ill.1979)); *cf. Owyhee Grazing Assoc. v. Field*, 637 F.2d 694, 697 (9th Cir.1981) ("The [Farmers Home Ad-

ministration], an unincorporated department of the federal government, is not a legal entity and may not be sued."). "[U]nless the true political entity has taken explicit steps to grant the servient agency with jural authority, the agency cannot engage in any litigation except in concert with the government itself." *Darby*, 939 F.2d at 314. For example, in *Shaw*, the Ninth Circuit held that, under a California statute providing that a "public entity" could "be sued," the San Jose Police Department qualified as a public entity and was thus subject to suit. 788 F.2d at 604–05, *followed in Streit v. County of Los Angeles*, 236 F.3d 552, 555–56 (9th Cir. 2001). By contrast, in *Meyer v. City & County of Honolulu*, the court held that, under Honolulu's charter, the police department was placed under the supervision of the managing director of the city and was thus not an independent legal entity that was subject to suit. 6 Haw.App. 505, 506 n. 1, 729 P.2d 388, 390 n. 1 (1986), *aff'd in part and rev'd on other grounds*, 69 Haw. 8, 731 P.2d 149 (1986).

▆ In the case at hand, Plaintiff has brought suit against the Liquor Commission of the County of Hawai'i. As previously stated, the county's charter creates a department of liquor control, which includes the Liquor Commission and which comes under the general supervision and control of the mayor. Hawai'i County Charter §§ 7–3.1, 7–3.5. The charter is silent as to whether the Liquor Commission may be sued. In addition, although HRS § 46–1.5(25) provides that the counties may be sued, the statute is similarly silent as to whether their departments are subject to suit. To be sure, HRS Chapter 281 contemplates that the liquor commissions' decisions may be appealed to the circuit courts as part of the administrative process, *see* HRS § 281–17 (citing HRS ch. 91); *E & J Lounge Operating Co.*, 118 Hawai'i 320, 189 P.3d 432. Still, in *Corder v. Kansas Board of Healing Arts*, 256 Kan. 638, 889 P.2d 1127 (1994), the Kansas Supreme Court held that, although the state board of healing arts's regulatory decisions were reviewable by state courts, the board nevertheless lacked the capacity to be sued for damages. *Id.* at 662–63, 889 P.2d 1127. The court observed that, in contrast to other agencies, the board had not been given the capacity "to sue or be sued" by the legislature. *Id.* at 665, 889 P.2d 1127. Thus, in this case, the fact that the Liquor Commission's decisions are subject to judicial review under HRS Chapter 281 does not mean that the commission has the capacity to be sued in a regular civil action. At no point does the chapter state that the commission "may sue or be sued." Yet those are precisely the terms that the Hawai'i Legislature has consistently utilized in directing that a governmental entity is subject to suit. *See, e.g.*, HRS §§ 10–16(a) (Office of Hawaiian Affairs), 54–31 (Board of Water Supply), 206E–4 (Hawaii Community Development Authority). In the absence of explicit steps to grant the commission the capacity to be sued, this Court concludes that the legislature did not intend for the Liquor Commission to be subject to suit. It lacks the capacity to be sued and will be dismissed from this action accordingly.

Defendants' additionally argue that "Plaintiff has failed to join an indispensable party to this action" and that this action should therefore be dismissed. (*See* Mem. in Supp. 26.) Plaintiff responds that Defendants' argument is "mere quibbling" and that, if their contention has merit, it should be afforded leave to amend the Complaint. (*See* Mem. in Opp'n 11.) Defendants do not give a name to the indis-

pensable party, but it is apparent that they are alluding to the County of Hawai'i. The county has already taken an active role in these proceedings by filing the notice of removal and the motion to dismiss. But, notwithstanding the fact that the county seems to be the obvious Defendant, to clarify the record, this Court grants Plaintiff twenty days' leave to amend the Complaint to formally join the County of Hawai'i as a Defendant and directs Plaintiff to do so. Accordingly, this Court denies Defendants' motion to dismiss the Complaint for the failure to join an indispensable party, but nevertheless grants their motion to dismiss the Complaint insofar as it asserts claims against the Liquor Commission.

## VI. Stay of Proceedings

At oral argument, Defendants moved to stay these proceedings pending the resolution of the administrative appeals before the Hawai'i Third Circuit Court. Given that only Plaintiff's § 1983 Fourteenth Amendment claims are presently before this Court, Defendants' motion calls for the resolution of two sub-issues. The first is whether staying those § 1983 claims would amount to abstention, and the second is whether *Younger* abstention applies in this case. *See Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971).

### A. The Effect of Staying Plaintiff's § 1983 Fourteenth Amendment Claims

 As a general matter, "a trial court may, with propriety, find it is efficient for its own docket and the fairest course for the parties to enter a stay of an action before it, pending resolution of independent proceedings which bear upon the case." *Mediterranean Enters., Inc. v. Ssangyong Corp.,* 708 F.2d 1458, 1465 (9th Cir.1983) (brackets omitted). Still, where a court's "stay amounts to abstention because it surrender[s] federal jurisdiction for an indefinite period to defer to a state court's judgment," the court must conclude that an abstention doctrine justifies the stay. *See Privitera v. California Bd. of Medical Quality Assurance,* 926 F.2d 890, 894–95 (9th Cir.1991).

In *Privitera,* a medical doctor licensed to practice in California was convicted of a crime, but subsequently pardoned by the governor. *Id.* at 891. Before the pardon, the state board of medical quality assurance initiated a proceeding to revoke the doctor's license, and he subsequently entered into a settlement agreement that required him to be on probation for ten years. *Id.* at 891–92. Thereafter, the board allegedly began an active campaign to harass the doctor, having the doctor's surveillance office exert undue pressure upon him and having the officer investigate a complaint against the doctor under false pretenses. *Id.* at 892. The board later sent an agent posing as a patient to see the doctor. *Id.* The agent signed a form stating that she was not an agent, and the form called for arbitration of any dispute. *Id.* Based on the agent's visit, the board instituted an accusation proceeding to revoke the doctor's probation and license. *Id.* The doctor filed an action in federal district court requesting injunctive relief under 42 U.S.C. § 1983 to enjoin the revocation proceeding, because it represented the culmination of a pattern of unjust harassment in contravention of his federal constitutional rights. *Id.* at 891–92. The doctor also sought to compel arbitration pursuant to the agreement signed by the board's agent and to obtain a declaration of his probationary status. *Id.* at

892. The board moved to dismiss the claim in light of the *Younger* abstention doctrine. *Id.* The district court dismissed the pendent claims without prejudice, denied the motion to dismiss on abstention grounds, and stayed the federal action pending resolution of the state issues by a state court because they would either moot the constitutional issues or impact their disposition. *Id.* at 892, 894. However, no proceeding had been filed in state court. *Id.* at 893.

The Ninth Circuit reversed. *Id.* at 896. It explained that the district court had correctly recognized that its decision to stay the federal issues could not be compelled by notions of exhaustion. *Id.* at 894. But the Ninth Circuit further explained that, "if a court inappropriately abstains, 'the practical effect of abstention may be to impose an exhaustion requirement not appropriate to 42 U.S.C. § 1983.'" *Id.* (quoting *Pearl Inv. Co. v. City & County of San Francisco*, 774 F.2d 1460, 1463 (9th Cir.1985)) (ellipsis omitted). The court noted that, "[a]lthough the district court did not treat its order to stay the action and remove it from the active calendar as abstaining, the stay amount[ed] to abstention because it surrendered federal jurisdiction for an indefinite period to defer to a state court's judgment." *Id.* The question was, therefore, whether the district court improperly abstained. *Id.* The Ninth Circuit held that abstention doctrines set forth in *Younger, Burford, Pullman,* and *Colorado River*[9] did not support the district court's decision to stay the federal claims and that the stay had therefore been improvidently imposed. *Id.* at 895–96.

In the case at bar, this Court has dismissed Plaintiff's state law claims for its failure to exhaust its administrative remedies before the Hawai'i Third Circuit Court. What remains before this Court are Plaintiff's § 1983 Fourteenth Amendment claims. The circuit court's resolution of the administrative appeals would possibly impact this Court's disposition of Plaintiff's § 1983 claims because it may have a preclusive effect in this action. *See Leong v. Hilton Hotels Corp.,* 698 F.Supp. 1496, 1498–1501 (D.Haw.1988). As was the case in *Privitera,* an order staying those claims pending the resolution of Plaintiff's appeals before the Hawai'i Third Circuit Court would thus be tantamount to abstention because it would, in effect, "surrender[ ] federal jurisdiction for an indefinite period to defer to a state court's judgment." *See* 926 F.2d at 895. Thus, in order to stay the § 1983 claims, an abstention doctrine must apply here. *See id.* at 894–95.

**B.** *Younger* **Abstention**

 This Court may raise the issue of *Younger* abstention sua sponte. *Cf. H.C. v. Koppel,* 203 F.3d 610, 613 (9th Cir.2000) (observing that "*Younger* abstention may be raised sua sponte at any point in the appellate process"). A court

> must abstain under *Younger* if four requirements are met: (1) a state-initiated proceeding is ongoing; (2) the proceeding implicates important state interests; (3) the federal plaintiff is not barred from litigating federal constitutional issues in the state proceeding; and (4) the federal court action would enjoin the

9. *See Burford v. Sun Oil Co.,* 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943); *Railroad Comm'n v. Pullman Co.,* 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941); *Colorado Riv-* *er Water Conservation Dist. v. United States,* 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976).

proceeding or have the practical effect of doing so, i.e., would interfere with the state proceeding in a way that *Younger* disapproves.

*San Jose Silicon Valley Chamber of Commerce Political Action Comm. v. City of San Jose,* 546 F.3d 1087, 1092 (9th Cir. 2008). Still, "[a]n exception to that general rule exists if there is a 'showing of bad faith, harassment, or some other extraordinary circumstance that would make abstention inappropriate.'" *Id.* (quoting *Middlesex County Ethics Committee v. Garden State Bar Ass'n,* 457 U.S. 423, 435, 102 S.Ct. 2515, 73 L.Ed.2d 116 (1982)).

For example, in *Gilbertson v. Albright,* 381 F.3d 965 (9th Cir.2004) (en banc), the plaintiff was a land surveyor whose license to survey in Oregon was revoked and not reinstated by the state board of examiners for engineering and land surveying. *Id.* at 968. The plaintiff appealed both decisions to a state appellate court. *Id.* Thereafter, he filed a § 1983 action in federal district court seeking damages from members of the board for violating his First Amendment, due process, and equal protection rights. *Id.* The district court dismissed the action based on *Younger* abstention. *Id.* On appeal, the Ninth Circuit observed that "federal courts should not dismiss actions where damages are at issue; rather, damages actions should be stayed until the state proceedings are completed." *Id.* Still, the Ninth Circuit agreed with the district court that the four *Younger* requirements had been met. *Id.* at 982–83. With respect to the first two requirements, the Ninth Circuit explained that the state appellate proceeding was ongoing when the plaintiff had filed his federal action and that the proceeding was of a judicial nature that implicated an important state interest, because the state had a strong interest in enforcing its licensing requirements. *Id.*

As to the third *Younger* requirement, the court observed that the plaintiff had raised his due process challenge and could have raised his First Amendment and equal protection claims before the state appellate court. *Id.* at 983. The court reasoned that, although the plaintiff could not have sought monetary relief in the state proceeding, that obstacle was obviated by staying, rather than dismissing, the federal action. *Id.* And, with respect to the fourth requirement, the Ninth Circuit explained that the constitutional issues raised in the plaintiff's federal complaint went to the heart of his opposition to the board's action in the state proceeding. *Id.* at 982. On that basis, the court concluded that a federal court's decision on the merits of the plaintiff's § 1983 claims would have the same practical effect on the state proceeding as an injunction, given the decision's preclusive effect. *Id.* at 977–78, 982.

Although the four *Younger* requirements had been met, the Ninth Circuit nevertheless concluded that the district court's analysis of the bad faith exception was incomplete. *Id.* at 983. As previously stated, under the bad faith exception, a federal court is not obliged to refrain from intervention where it properly finds that the "'state proceeding is motivated by a desire to harass or is conducted in bad faith.'" *Id.* (quoting *Huffman v. Pursue, Ltd.,* 420 U.S. 592, 611, 95 S.Ct. 1200, 43 L.Ed.2d 482 (1975)). The district court had concluded that this exception did not apply because the proceeding before the state court of appeals had been initiated by the *plaintiff. Id.* at 969, 983. However, the Ninth Circuit explained that the bad faith exception turned on whether the *state* prosecuted the disciplinary proceeding be-

fore the board of examiners in good faith, as the appeals process was but an extension of that proceeding. *Id.* The court concluded that, because the district court had not determined whether the board "instituted or conducted the proceeding to revoke or not to reinstate [the plaintiff]s license in good faith," it would remand the case to the district court for further consideration of the bad faith exception. *Id.* at 983–84.

Returning to the case at hand, with respect to the first and second requirements, Plaintiff's appeals before the Hawai'i Third Circuit Court were pending when it filed its action. (*See* Compl. at 1; Mot. to Dismiss, Exs. 1, 3.) In those appeals, the circuit court's function, although partly administrative, is also judicial because it has the authority to set aside the commission's decisions "if arbitrary or unreasonable and hence violative of constitutional rights." *See Porter*, 286 U.S. at 468, 52 S.Ct. 617; *see also Bacon*, 232 U.S. at 138, 34 S.Ct. 283; *Gilbertson*, 381 F.3d at 982–83; HRS § 91–14(g). The appeals implicate an important state interest, as the State of Hawai'i has a strong interest in enforcing its liquor licensing requirements. *See Colonial First Props. v. Henrico County*, 236 F.Supp.2d 588, 601 (E.D.Va.2002) (explaining that Virginia's "interest in regulating the distribution of alcohol is an important state interest supporting the [Virginia Alcoholic Beverage Control] Board's regulation"); *Kendall–Jackson Winery, Ltd. v. Branson*, 82 F.Supp.2d 844, 856 (N.D.Ill. 2000) (observing that "[t]he state has an important interest in regulating liquor distribution"); *cf. Gilbertson*, 381 F.3d at 983. In summary, state-initiated proceedings are ongoing before the circuit court and those proceedings implicate important state interests. *See id.*

Regarding the third *Younger* requirement, HRS § 91–14(g)(1) contemplates that the circuit court may set aside the Liquor Commission's decisions if they are "[i]n violation of constitutional ... provisions." Under that provision, in its first appeal, Plaintiff has requested that the circuit court reverse and vacate the commission's decision not to renew Plaintiff's liquor license because, in making that decision, the commission offended Plaintiff's due process and equal protection rights. (Mot. to Dismiss, Ex. 1–1 at 1, 6–12.) And, in its second appeal, Plaintiff has asked the circuit court to reverse and vacate the Liquor Commission's decision not to amend the conditions on Plaintiff's liquor license because, in so deciding, the commission violated Plaintiff's due process rights. (Mot. to Dismiss, Ex. 3 at 1, 5–7.) Accordingly, Plaintiff is plainly not barred from litigating federal constitutional issues in the appeals to the circuit court. *See Gilbertson*, 381 F.3d at 983. The fact that Plaintiff cannot recover damages in the appeals is of no moment because, if this Court were to abstain, it would stay, rather than dismiss, this action. *See id.*

As to the fourth requirement, the constitutional issues that Plaintiff has raised in his Complaint before this Court are nearly identical to the points of error it has asserted in its appeals to the Hawai'i Third Circuit Court. In both actions, Plaintiff has maintained that the Commission's decision not to renew its liquor license was violative of its equal protection and due process rights and that the commission's later decision not to amend the conditions that were placed upon the license offended its due process rights. (*See* Compl. ¶¶ 21–28; Mot. to Dismiss, Ex. 1–1 at 6–12, Ex. 2 at 5–7.) In consequence, a decision in this matter would have the practical effect of enjoining the proceedings before the circuit court. *See Gilbertson*, 381 F.3d at 982. Accordingly, the four *Younger* requirements are met in this case. *See id.*

The remaining question is whether the bad-faith exception nevertheless renders *Younger* abstention inappropriate. Under the bad-faith exception, a federal court is not obliged to refrain from intervention where it finds that " 'the state proceeding is motivated by a desire to harass or is conducted in bad faith.' " *Gilbertson*, 381 F.3d at 983 (quoting *Huffman*, 420 U.S. at 611, 95 S.Ct. 1200). To illustrate, a proceeding is motivated by a desire to harass where it is initiated "with no intention of securing a conclusive resolution by an administrative tribunal or the courts." *Partington v. Gedan*, 961 F.2d 852, 862 (9th Cir.1992). And a proceeding is conducted in bad faith where there is "financial bias by the tribunal," *id.*, as well as where it is "motivated by [a party's] suspect class or in retaliation for [his] exercise of constitutional rights," *Phelps v. Hamilton*, 122 F.3d 885, 889 (10th Cir.1997). In order to establish bad faith at the pleading stage, a plaintiff " 'must allege specific facts to support an inference of bad faith.' " *Arkebauer v. Kiley*, 985 F.2d 1351, 1359 (7th Cir.1993) (quoting *Collins v. County of Kendall*, 807 F.2d 95, 98 (7th Cir.1986)); *see also Worldwide Church of God, Inc. v. California*, 623 F.2d 613, 616 (9th Cir. 1980) (per curiam) (concluding that the plaintiff's complaint did not trigger the bad-faith exception to *Younger* abstention because it did not allege harassment or bad faith with "sufficient specificity").

In the case at hand, there is no suggestion that the appeals before the Hawai'i Third Circuit Court were conducted in bad faith. Nevertheless, those appeals were simply an outgrowth of the proceedings before the Liquor Commission. *See Gilbertson*, 381 F.3d at 983. The pivotal question is therefore whether those proceedings were tainted by bad faith. *See id.* The Complaint does not allege that those proceedings were frivolous. (*See* Compl. ¶¶ 11–13.) Rather, it indicates that they were prompted by a noise complaint and that the charge was thereafter substantiated by the testimony of Plaintiff's neighbors in a hearing before the commission. (*Id.*) In the course of those proceedings, the commission allegedly violated constitutional, statutory, and regulatory provisions. (*See id.* ¶¶ 21–36.) But such violations do not, without more, give rise to an inference of bad faith, for, as the Second Circuit has explained, "[a] state proceeding that is legitimate in its purposes, but unconstitutional in its execution—even when the violations of constitutional rights are egregious—will not warrant the application of the bad faith exception." *Diamond "D" Constr. Corp. v. McGowan*, 282 F.3d 191, 199 (2d Cir.2002). "To invoke this exception, the federal plaintiff must show that the state proceeding was initiated with and is animated by a retaliatory, harassing, or other illegitimate motive." *Id.*

To be sure, the Complaint does allege that the Liquor Commission treated Plaintiff differently than other similarly situated liquor licensees and that such disparate treatment was "fueled by animus." (Compl. ¶ 28.) Yet, at the same time, it does not offer any specific factual allegations as to why the commissioners may have harbored ill will or animosity towards Plaintiff in treating it differently than other liquor licensees. *See Black's Law Dictionary* 97 (8th ed.2004) (defining "animus" as "[i]ll will; animosity");[10] *Gonnella v. Johnson*, 115 Fed.Appx. 770,

---

**10.** Remarkably, the word "animus" does not have such negative connotations in the Deluxe Sixth Edition of *Black's Law Dictionary* 87 (Deluxe 6th ed.1990), which defines the

772 (6th Cir.2004) (unpublished opinion) (holding that the plaintiff had not shown that he had been prosecuted for the offense of aggravated exploitation of a minor in bad faith, because he had only raised conclusory allegations in support of his claim and because he "did not explain why the defendants would want to interfere with his parental rights"); *Murray v. N.Y.P.D. 25th Precinct,* No. 03 Civ. 4636, 2004 U.S. Dist. LEXIS 6021, *5–*6 n. 1 (S.D.N.Y. Apr. 9, 2004) (concluding that the plaintiff had failed to establish the bad faith exception to *Younger* abstention because, although he had made allegations of bad faith on the part of the arresting officers, he had "not made any specific allegations as to why the prosecutor is, or might be, acting in bad faith"). The commissioners' subjective motivation is "critical to, if not determinative of," the bad-faith inquiry. *See Diamond "D" Constr.,* 282 F.3d at 199. The Complaint does not assert, for example, that any of the commissioners had a conflict of interest, *see Partington,* 961 F.2d at 862, or that their conduct was motivated by a suspect classification or for Plaintiff's exercise of a constitutional right, *see Phelps,* 122 F.3d at 889. Plaintiff's conclusory allegation that the commissioners were motivated by "animus" is simply insufficient. *See Arkebauer,* 985 F.2d at 1359. In the absence of allegations of specific facts to support an inference of bad faith, this Court concludes that this case does not fit within the "narrow" bad-faith exception to *Younger* abstention. *See id.* at 1358–59.

In the final analysis, because the bad-faith exception does not apply, because the other *Younger* exception for "extraordinary circumstances" does not appear to apply either,[11] and because the four *Younger* requirements have been met, this Court will abstain from deciding Plaintiff's § 1983 Fourteenth Amendment claims and will therefore grant Defendants' motion to stay these proceedings pending the resolution of Plaintiff's appeals currently before the Hawai'i Third Circuit Court. *See Gilbertson,* 381 F.3d at 968; *cf. Privitera,* 926 F.2d at 894–96. Still, Plaintiff may be able to allege facts specifically showing that the proceedings before the Liquor Commission were initiated or conducted in bad faith. It is therefore granted twenty days' leave to amend its Complaint to allege such facts. *See Worldwide Church of God,* 623 F.2d at 616 (concluding that, although the plaintiff's complaint did not allege bad faith with sufficient specificity, the plaintiff might be able to allege facts demonstrating bad faith if permitted to amend its complaint and that, because the plaintiff was entitled to amend its complaint under Fed.R.Civ.P. 15(a), the district court erred in refusing to permit an amendment of the complaint). In the event that Plaintiff amends its Complaint in that regard, it may file a motion for this Court to reconsider this order of abstention.

### CONCLUSION

In light of the foregoing, this Court:

---

term as "[m]ind; soul; intention; disposition; design; will; that which informs the body."

**11.** " 'Extraordinary circumstances' have not been cataloged fully, but Plaintiff's case does not approach the example referred to in *Younger,*" where the Supreme Court observed that, " 'if a statute "flagrantly and patently" violates "express constitutional prohibitions in every clause, sentence and paragraph," then federal intervention in state court proceedings is appropriate.' " *Baffert v. Cal. Horse Racing Bd.,* 332 F.3d 613, 621–22 (9th Cir.2003) (quoting *Aiona v. Judiciary of Hawaii,* 17 F.3d 1244, 1248–49 (9th Cir.1994) (quoting *Younger,* 401 U.S. at 53, 91 S.Ct. 746)).

(1) GRANTS Defendants' motion to dismiss Plaintiff's state law claims arising under the Hawai'i Constitution, HRS Chapter 281, and the Liquor Commission Rules, because Plaintiff has failed to exhaust its administrative remedies under HRS Chapters 281 and 91;

(2) GRANTS Defendants' motion to dismiss Plaintiff's § 1983 Fifth Amendment claims, because, as Plaintiff concedes, it has not alleged that Defendants were acting on behalf of the federal government;

(3) DENIES Defendants' motion to dismiss Plaintiff's § 1983 Fourteenth Amendment claims under the Equal Protection and Due Process Clauses, because

(a) the Circuit Court of the Third Circuit of the State of Hawai'i and the Liquor Commission do not have primary jurisdiction to decide Plaintiff's claims under the Fourteenth Amendment,

(b) Plaintiff has sufficiently stated a class of one equal protection claim,

(c) Plaintiff has sufficiently stated that the Liquor Commission's license-renewal decisions constituted official policy and that such policy was the moving force behind the alleged constitutional violations, and

(d) Defendants do not assert that Plaintiff's due process allegations fail to state the elements of a due process claim;

(4) GRANTS Defendants' motion to dismiss Plaintiff's claims to the extent that they are asserted against the Liquor Commission, because the commission does not have capacity to be sued;

(5) DENIES Defendants' motion to dismiss the Complaint for failure to join an indispensable party;

(6) GRANTS Plaintiff twenty days' leave to amend the Complaint to formally name the County of Hawai'i and directs Plaintiff to do so;

(7) GRANTS Plaintiff leave to amend the Complaint to allege state law claims once it has exhausted its administrative remedies under HRS Chapters 281 and 91;

(8) GRANTS Defendants' motion to stay these proceedings pending the resolution of Plaintiff's appeals in the Hawai'i Third Circuit Court; and

(9) GRANTS Plaintiff twenty days' leave to amend the Complaint to allege bad faith with specificity.

IT IS SO ORDERED.